[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12381

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSEPH LEE MURPHY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00140-KD-B-1

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Joseph Lee Murphy appeals his convictions for conspiring to possess and for possessing with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 846, and his sentence of 24 months of imprisonment. Murphy challenges the procedural and substantive reasonableness of his sentence and argues that the district court erred by admitting evidence of uncharged conduct without proper notice. Fed. R. Evid. 404(b). We affirm.

A grand jury indicted Murphy for conspiring to possess and for possessing with intent to distribute methamphetamine and marijuana, 21 U.S.C. §§ 841(a)(1) 846, between February 20 and July 28, 2021. During that time, Murphy was an inmate at the Mobile County Jail, where his alleged criminal conduct occurred.

At trial, the government presented testimony from Officer Monya Ward about a "shakedown" of cell number 1294 on June 7, 2021. Murphy was the last inmate to leave the cell. Before he did, Officer Ward heard the toilet flushing repeatedly and Murphy say, "F**k this s***t. They gonna find it anyway." Officer Ward searched the cell and found an "unusual amount of contraband" in a "boat," or an inmate bed, by the cell door. Specifically, Officer Ward found a plastic bag in a hole that was cut in the middle of the

mattress pad, a shank just "inches" away from the plastic bag, and a little black pouch.

Sergeant Anita Nanton testified that the bag contained a substance that "smelt like weed" and "spice," or synthetic marijuana. Murphy objected to Sergeant Nanton calling the substance "spice" without a drug analysis, but Sergeant Nanton clarified that she believed the substance to be "spice, the synthetic marijuana" based on her experience as a sergeant at the jail.

Detective William Givens testified that the black pouch held about 200 small baggies containing 38 grams of a substance that tested positive for methamphetamine. Based on his 11 years of experience working with narcotics, Detective Givens identified the other substance as marijuana, which weighed less than 15 grams.

The government sought to introduce testimony from April Foreman, a criminal intelligence analyst, about a contraband drop at the jail on January 10, 2021, one month before the period identified in the indictment, that led her to investigate Murphy. The government asserted that the testimony concerned conduct that was inextricably intertwined with the charged conduct. Murphy objected that the testimony fell within Federal Rule of Evidence 404(b) because it was uncharged conduct of which he was not given prior notice, although he acknowledged that an allegation of the contraband drop was included in discovery. The district court overruled Murphy's objection and found that the evidence was part of the course and conduct of the conspiracy.

Foreman testified that she worked for Global Tel Link, which contracted with the jail to provide telephone and visitation services, and she was assigned to the Sheriff's Office. After learning that a bag containing marijuana and other items was found caught in the barbed wire fence behind the jail on January 15, 2021, Foreman began to investigate. Foreman determined that someone attempted the drop on January 11 and that the bag was intended for someone in the 1200 block of the jail. Based on her review of telephone calls made the day before the drop for the 1200 block of the jail, Foreman discovered that Murphy participated in two phone calls regarding a package on the day before the drop. Foreman also listened to one of Murphy's phone calls with another inmate in which "flak" and "joe" were referenced. Foreman explained that "flak" was a synthetic narcotic that was also called "flakka," and "joe" could refer to synthetic marijuana or "K2." Foreman also accessed Murphy's inmate account balance, which was over $4,000.

Amy White, a financial investigator for the Drug Enforcement Administration, testified about her assessment of Murphy's inmate account. The opening balance of Murphy's account was 34 cents, and beginning in April 2020, he received payments of about $50 or $60 at a time from a depositor named "wife" and another woman. But in January 2021, Murphy began receiving payments from "random third-party individuals," many of which were between $20 and $40 per transaction. Between April 2020 and July 2021, Murphy received $3,575 in deposits from third parties other than the two women.

The jury found Murphy guilty of conspiring to possess and of possessing with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 846, but not methamphetamine.

Murphy's presentence investigation report provided a total offense level of 32, a criminal history category of III, and a maximum sentence of 5 years of imprisonment for each count. Murphy objected that his offense level incorrectly included the methamphetamine weight and that the total converted drug weight should include only the marijuana, which was less than one kilogram. *See* U.S.S.G. § 2D1.1(c)(17). Murphy also objected to a two-level enhancement for possessing a dangerous weapon because the jury made no finding on that issue and another cell mate could have possessed the shank. *See id.* § 2D1.1(b)(1).

The district court sustained Murphy's objection to including the methamphetamine. The district court ruled that, although there was sufficient evidence to include the synthetic marijuana, it could not do so because the government could not establish the weight. The district court overruled Murphy's objection to the dangerous weapon enhancement because it was logical to conclude from the evidence and the jury verdict that Murphy was in the trade of selling marijuana and that he possessed the shank to protect his drugs. As a result, Murphy's total offense level became ten, which included a base offense level of six, *id.* § 2D1.1(c)(17), a two-level enhancement for the dangerous weapon, *id.* § 2D1.1(b)(1), and a two-level enhancement because the offense involved distributing controlled substances in a jail, *id.* § 2D1.1(b)(4).

Murphy's new guideline range was 10 to 16 months of imprisonment, but the district court varied upwards and sentenced Murphy to 24 months of imprisonment to "take[] into consideration the synthetic marijuana which we don't have a calculation for."

We reject Murphy's argument that the district court abused its discretion by admitting Foreman's testimony about the contraband drop in January 2021. Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b) applies only to evidence of crimes and acts that are extrinsic to the charged offense. *See United States v. Saintil*, 753 F.2d 984, 987 (11th Cir. 1985). Evidence of criminal activity other than the charged offense is not extrinsic, and is outside of the scope of Rule 404(b), when it is "an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, [] necessary to complete the story of the crime, or [] inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Foreman testified that she began her investigation because of the January contraband drop, which Murphy acknowledged was an allegation that was included in discovery. Foreman's investigation led her to discover Murphy and to monitor his communications and inmate account during the months leading up to the June shakedown. These communications referred to "flakka" and "joe," both slang for synthetic drugs, and Murphy's inmate account

activity, beginning around January 2021, appeared to be consistent with drug sales. Because Foreman's testimony described how the investigation into Murphy's criminal conduct began and progressed over the months leading up to the shakedown, this testimony fell outside the scope of Rule 404(b) and notice was not required. *Id.*

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must "commit[] no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* We will disturb "the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

Murphy's sentence is procedurally reasonable. The record refutes his argument, which we review for plain error only, that no reliable evidence established the identify of the synthetic marijuana. *See United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006). The government is permitted to establish the identity of a controlled substance using circumstantial evidence, including "lay experience based on familiarity through prior use, trading, or law

enforcement." *United States v. Williams*, 865 F.3d 1328, 1344 (11th Cir. 2017). Sergeant Nanton testified that the substance was "spice," or synthetic marijuana, based on her familiarity with the substance through her law enforcement work. Because her opinion testimony identifying the substance as synthetic marijuana was rationally based on her perception and law enforcement experience, the district court did not plainly err by relying on it. *See id.*; *Nash*, 438 F.3d at 1304.

Murphy argues that the district court also procedurally erred by applying the dangerous weapon enhancement because "mere presence" should not be sufficient to establish that he constructively possessed the shank. We disagree. The proximity between the weapon and drugs alone was sufficient for the government to meet its initial burden of proving that Murphy possessed a dangerous weapon in connection with his drug trafficking activities. *See United States v. Carillo-Ayala*, 713 F.3d 82, 91-92 & n.9 (11th Cir. 2013). The evidence established that the shank and the bag of marijuana were found in the same mattress and were just "inches" from each other. The district court stated that the jury verdict and evidence supported that Murphy was engaged in the trade of selling marijuana, and "having a shank to protect his drugs is logical." Murphy has not met his heavy burden of proving that this connection was "clearly improbable." *See id.*; U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A).

Murphy's sentence is substantively reasonable, too. Murphy argues that the district court erred by varying upwards to hold him

accountable for the shank because that was conduct covered by the dangerous weapon enhancement. Although the district court stated after pronouncing Murphy's sentence that it was "holding [Murphy] responsible for the dangerous weapon" and for other conduct, the written statement of reasons issued by the district court stated that it varied upwards only "[t]o account for unquantified [s]ynthetic [m]arijuana." So Murphy identifies no error.

We **AFFIRM** Murphy's convictions and sentence.